**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

CALE T. M., [1]
      Plaintiff,

           v.                            Civil No. 3:20cv70 (REP)

ANDREW M. SAUL,
Commissioner of Social Security,
      Defendant.

**REPORT AND RECOMMENDATION**

     This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits under the Social Security Act. Cale T. M. ("Plaintiff"), forty-six years old at the time of his benefits application, previously worked as a tobacco farmer and mechanic. (R. at 48.) Plaintiff suffers from myotonic muscular dystrophy type 1 and cardiac disorder. (R. at 42.) Plaintiff alleges his disability results from complications caused by his myotonic muscular dystrophy type 1, which causes weakening of the muscles, including in his upper and lower extremities, and difficulty swallowing. (R. at 64-65, 69.) Specifically, Plaintiff alleges that his difficulty swallowing requires him to consume a liquid diet, and necessitates breaks for him to prepare his liquid meals. (R. at 64.) Plaintiff also asserts the disease has caused a weakening of his upper and lower extremities, causing difficulty with physical activities such as lifting, standing, and manipulation. (R. at 64-65, 69.) Because of these symptoms, Plaintiff asserts that he is unable to work on a sustained basis. (R. at 64-65.)

---

[1]    The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

On December 27, 2018, an Administrative Law Judge ("ALJ") denied Plaintiff's application for disability insurance benefits. (R. at 40-50.) After exhausting his administrative remedies, Plaintiff now seeks review of the ALJ's decision. This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross motions for summary judgment, rendering the matter ripe for review.[2]

Plaintiff's appeal to this Court argues that: (1) the ALJ erred by failing to make an explicit step one finding under the two-step pain analysis required by *Craig v. Chater*; (2) the ALJ failed to explain why he rejected the state agency physicians' opinions that Plaintiff was limited to sedentary work; (3) the ALJ failed to account for Plaintiff's need for unscheduled breaks; and (4) the Social Security Administration Appeals Council ("Appeals Council") erred by failing to consider the opinion of Peggy Anglin, a physical therapist who evaluated Plaintiff after the ALJ rendered his decision. (Pl.'s Brief in Supp. of Mot. For Summ. J. 6-11, ECF No. 15 ("Pl.'s Mem.").)

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 13) be GRANTED, that the Defendant's Motion for Summary Judgment (ECF No. 16) be DENIED and the final decision of the Commissioner be VACATED and REMANDED.

---

[2]     The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

## I. PROCEDURAL HISTORY

On April 5, 2016, Plaintiff filed an application for disability insurance benefits, alleging disability due to myotonic dystrophy, severe pulmonary infection, and heart problems. (R. at 93, 184.) The Social Security Administration denied Plaintiff's claim initially on September 27, 2016, and again upon reconsideration on August 21, 2017. (R. at 103, 118.) Plaintiff requested a hearing before an ALJ, and a hearing was held on August 14, 2018. (R. at 55.) On December 27, 2018, the ALJ issued a written opinion, denying Plaintiff's claim and concluding that Plaintiff did not qualify as disabled under the Social Security Act. (R. at 40-50.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court upholds an ALJ's Social Security disability determination if "(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020) (citing 42 U.S.C. § 405(g) and *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Pearson*, 810 F.3d at 207 (internal quotation marks omitted). Substantial evidence thus requires more than a scintilla of evidence, but less than a preponderance of the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Between these two evidentiary thresholds lies a "zone of choice" where the ALJ's decision can go either way without interference by the courts. *See Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). "'In reviewing for substantial evidence, we do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment' for the ALJ's." *Arakas*, 983 F.3d at 95 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).

3

In considering the decision of the ALJ based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)). If substantial evidence in the record supports the ALJ's findings as to any fact, it is binding on the reviewing court regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *See id*.

### III. THE ALJ'S DECISION

On August 14, 2018, the ALJ held a hearing during which Plaintiff, who was represented by counsel, Plaintiff's father, and a vocational expert testified. (R. at 55-88.) On December 27, 2018, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Social Security Act. (R. at 40-50.) The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 18-30); 20 C.F.R. § 404.1520(a)(4); *see also Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

According to those regulations, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite his

4

physical and mental limitations. § 404.1545(a). At step four, the ALJ assesses whether the claimant can perform his past work given his residual functional capacity. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 404.1520(a)(4)(v).

In the instant case, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of November 1, 2015. (R. at 42.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: myotonic muscular dystrophy type 1 and cardiac disorder. (R. at 42.) At step three, the ALJ determined that neither of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 43-44.)

After step three, the ALJ determined Plaintiff's residual functional capacity based on an evaluation of the evidence, including medical records, Plaintiff's testimony, Plaintiff's father's testimony, and the findings of treating and examining health care providers. (R. at 44-48.) Based on this evidence, the ALJ determined that Plaintiff retained the ability to perform light work, and among other non-exertional limitations, limited Plaintiff to "frequent, but not constant, handling and fingering." (R. at 44.) The ALJ explained this determination by summarizing the evidence in the record and holding that the longitudinal record demonstrated that Plaintiff's functional limitations were not as severe as Plaintiff alleged. (R. at 44-48.)

Based on this determination, the ALJ then considered, at step four, whether Plaintiff could perform his past relevant work, which was all classified at the heavy level of exertion. (R. at 48.) The ALJ concluded that Plaintiff's limitations prevented him from performing any of his past relevant work. (R. at 48.)

At step five, the ALJ considered whether Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 49.) The ALJ weighed the testimony of the vocational expert, who opined that, given the residual functional capacity above, Plaintiff could perform the requirements of occupations such as shipping and receiving weigher, small parts assembler, and inspector/hand packager. (R. at 49.) The ALJ determined that, given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff can make a successful adjustment to other work that exists in significant numbers in the national economy. (R. at 49-50.) The ALJ, therefore, concluded that a finding of "not disabled" was appropriate. (R. at 50.)

## IV. ANALYSIS

Plaintiff's appeal to this Court challenges the ALJ's finding of "not disabled," arguing that: (1) the ALJ erred by failing to make an explicit step one finding under the two-step pain analysis required by *Craig v. Chater*; (2) the ALJ failed to explain why he rejected the state agency physicians' opinions that Plaintiff was limited to sedentary work; (3) the ALJ failed to account for Plaintiff's need for unscheduled breaks; and (4) the Social Security Administration Appeals Council erred by failing to consider the opinion of physical therapist Peggy Anglin. (Pl.'s Mem. at 6-11.) For the reasons set forth below, the ALJ erred in denying Plaintiff's application for benefits.

### A. The ALJ Erred by Failing to Make a Finding at Step One of the *Craig v. Chater* Pain Assessment.

Plaintiff argues that the ALJ erred by failing to make a step one finding in the two-step *Craig v. Chater* inquiry. (Pl.'s Mem. at 6.) In response, Defendant concedes that the ALJ did not explicitly discuss step one of the *Craig* pain analysis, but argues the ALJ's decision nonetheless demonstrates that the ALJ made the appropriate the step one finding. (Def.'s Mot. For Summ. J. and Br. in Supp. Thereof 13-16, ECF No. 16 ("Def.'s Mem.").)

After step three of the ALJ's analysis, but before making a determination whether the claimant can perform past relevant work, the ALJ must assess the claimant's residual functional capacity. § 404.1545(a). Residual functional capacity "is 'the most' the claimant 'can still do despite' physical and mental limitations that affect [the claimant's] ability to work." *Mascio*, 780 F.3d at 635 (quoting § 416.945(a)(1)). In analyzing a claimant's abilities, the ALJ must first assess the nature and extent of the claimant's limitations and then determine the claimant's residual functional capacity for work activity on a regular and continuing basis. § 404.1545(b), (c). The residual functional capacity formulation must incorporate impairments supported by objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. § 404.1529(a).

When evaluating a claimant's subjective complaints of pain or other symptoms in the context of a residual functional capacity determination, the ALJ must follow a two-step analysis. § 404.1529(a); *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). The first step of the *Craig* analysis requires the ALJ to determine the existence of an underlying medically determinable physical or mental impairment or impairments that could reasonably produce the claimant's alleged pain or other symptoms. § 404.1529(b); *Craig*, 76 F.3d at 594. This threshold determination requires a showing, by objective evidence, "of the existence of a medical impairment 'which could be reasonably expected to produce' the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 594. Only after this threshold determination may the ALJ proceed to the second step and evaluate the intensity and persistence of those symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* at 595.

At the second step, the ALJ determines the extent to which the pain impairs the claimant's ability to work, which requires the ALJ to consider objective medical evidence and other objective

evidence, as well as the claimant's allegations. *Id.* Although an ALJ may not discredit a claimant's allegations "solely because they are not substantiated by objective evidence of the pain itself or its severity," a claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he or] she suffers." *Id.* at 595.

An ALJ's failure to make a finding at step one and determine whether the claimant has a medically determinable impairment that could reasonably produce the pain alleged by the claimant can be grounds for remand. *Prophet v. Saul*, No. 3:18cv741, 2020 WL 94862, at *6 (E.D. Va. Jan. 8, 2020). Specifically, for a symptom or pain to be found disabling, "there *must* be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some pain, or pain of some severity, but *the pain the claimant alleges she suffers*." *Craig*, 76 F.3d at 594. In reviewing the need to make an explicit step one finding, this Court has explained,

> [t]o skip the first step and ignore whether objective evidence of a condition exists that could produce the pain or other symptoms alleged prevents this Court from conducting a fair and just *de novo* review and undermines the legal standard to which ALJs must adhere when addressing complaints of pain.

*Prophet*, 2020 WL 94862, at *6. Thus, where the Court cannot discern an ALJ's step one finding for review, specifically whether the medically determinable impairment could reasonably be expected to cause the symptoms alleged by the Plaintiff, remand is warranted. *See id.*

In this case, the ALJ did not determine whether Plaintiff had an underlying medically determinable physical impairment that could reasonably produce his alleged symptoms as required under step one. (*See* R. at 43-48.) The ALJ recognized that Plaintiff suffered from myotonic muscular dystrophy type 1 diagnosis and cardiac disorder, and noted that the Plaintiff had problems with choking, swallowing, and talking; experienced a loss of strength and as a result could only

8

lift five to ten pounds and dropped things; and was on a liquid diet requiring he drink meals eight times a day. (R. at 44.) Notwithstanding this discussion, the ALJ never explained whether the illnesses above were medically determinable physical conditions that could cause the symptoms Plaintiff alleged. For this reason, the ALJ did not comply with step one of the *Craig* analysis. (R. at 43-48.)

Defendant contends that even though the ALJ failed to make an express step one finding, remand is not warranted because the ALJ "explained that his finding 'encompasse[d] the statutory requirement[] that [Plaintiff] has a medically determinable impairment' [b]ased on evidence from an 'acceptable medical source.'" (Def.'s Mem. at 14 (citing R. at 42, n. 1).) Despite Defendant's assertion, the language quoted by the Defendant was made in reference to nonsevere medical conditions. (R. at 42.) The ALJ found only that the other medical conditions referenced in the record were "nonsevere or not medically determinable." (R. at 42.) The ALJ made no finding that any of Plaintiff's impairments *were* medically determinable. (*See* R. at 42.)

Defendant also argues that "reading the ALJ's decision as a whole" it is evident that the ALJ found Plaintiff's medically determinable impairments could be expected to produce Plaintiff's symptoms, and accordingly, the ALJ satisfied step one of the *Craig* analysis. (Def.'s Mem. at 15.) In support of this argument, Defendant cites several cases, none of which are persuasive in deciding the instant case. (*See* Def.'s Mem. at 15-16.) First, Defendant cites *Nelson v. Apfel*, an unpublished, *per curiam* opinion, in which the Fourth Circuit declined to remand where the ALJ failed to make an explicit step one finding because the ALJ sufficiently discussed the claimant's impairments and associated symptoms. 166 F.3d 333, 1998 WL 879588, at *3 (4th Cir. 1998). As an initial matter, unpublished opinions are not binding in this circuit. *Mueller v. Angelone*, 181 F.3d 557, 579 n.15 (4th Cir. 1999). Several courts, including this Court, have sharply criticized

*Nelson*'s reasoning as inconsistent with *Craig v. Chater*, which requires the ALJ to establish the existence of a medically determinable underlying impairment that could reasonably be expected to be the cause of disabling pain, and accordingly declined to follow *Nelson*. *See Prophet*, 2020 WL 94862, at *7; *Janice L. v. Saul*, No. 4:19cv00045, 2021 WL 930693, at *8 (W.D. Va. Mar. 11, 2021) (citing cases); *Lester v. Astrue*, No. 5:10cv00380, 2011 WL 4344014, at *8 (S.D. W. Va. Sept. 13, 2011) (criticizing *Nelson* for its relaxed interpretation of the *Craig* analysis). Moreover, the Fourth Circuit has not cited *Nelson* since it was issued.  Second, Defendant cites *Ronald N.E. v. Saul*, where this Court found that the ALJ satisfied step one of the *Craig* analysis by discussing Plaintiff's medical records and concluding that the "record supports the *types* of limitations that the claimant has alleged." *Ronald N. E. v. Saul*, No. 3:19cv281, 2020 WL 4873867, at *5 (E.D. Va. July 31, 2020), *report and recommendation adopted*, No. 3:19cv281, 2020 WL 4872836 (E.D. Va. Aug. 19, 2020). But, *Ronald N.E.* is distinguishable from the present case because there, the Court found that the ALJ's statement that the "record supports the types of the limitations that the claimant has alleged" was a step one finding that the claimant has a medically determinable impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms, and therefore satisfied step one of the *Craig* analysis. *Id.* In contrast, here, the ALJ here made no similar statement akin to a step one finding.[3]

---

[3]     Importantly, courts generally do not require a discussion or explanation regarding the step one finding under *Craig*, so long as the ALJ makes an appropriate *threshold determination* that claimant's impairments could reasonably be expected to cause the claimant's pain or other symptoms. *See Powell v. Colvin*, No. 3:16cv56, 2016 WL 6562071, at *6 (E.D. Va. Oct. 14, 2016) (holding ALJ does not err by finding the claimant's medically determinable impairments could reasonably be expected to cause only *some* of the alleged symptoms and such a statement meets the step one threshold); *Wanda H. v. Saul*, No. 3:19cv001, 2019 WL 6709387, at *6 (E.D. Va. Dec. 9, 2019) (finding no issue with ALJ's determination that claimant's impairments could be expected to cause some symptoms because the ALJ "merely rejected some of the symptoms alleged by Plaintiff while accepting others").

Third, Defendant cites cases from other districts within the Fourth Circuit—one for the proposition that the ALJ does not need to make an explicit step one finding, and the other for the general proposition that the Court must read the ALJ's decision as a whole. (Def.'s Mem. at 15-16 (citing *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 651 (D. Md. 1999) and *Lydia v. Astrue*, No. 2:11-1453, 2012 WL 3304107, at *5 (D.S.C. July 25, 2012), *report and recommendation adopted*, No. 2:11-1453, 2012 WL 3308108 (D.S.C. Aug. 13, 2012)).) The Court recognizes that several courts within the Fourth Circuit have held that an ALJ does not need to make an explicit step one finding, so long as the ALJ's decision demonstrates consideration of the step one inquiry. *See, e.g.*, *Harris v. Berryhill*, No. 1:16cv140, 2017 WL 1755968, at *9 (M.D.N.C. May 4, 2017) (citing cases). Nonetheless, the Court finds it more appropriate to follow the reasoning set forth in *Prophet*, as it is a recently decided case within this district and contained a thorough analysis of *Nelson* and the requirements to perform a proper pain inquiry pursuant to *Craig*.

In sum, because the ALJ failed to make a step one finding in accordance with the mandate set forth in *Craig*, the Court recommends remand.

**B. The ALJ Did Not Err in His Evaluation of the State Agency Physicians' Opinions.**

Plaintiff argues that the ALJ erred by failing to explain why he rejected portions of the state agency physicians' opinions regarding Plaintiff's capacity to perform sedentary work and ability to only occasionally manipulate objects either by handling or fingering. (Pl.'s Mem. at 7-8.) Defendant responds that the ALJ properly evaluated the state agency physicians' medical opinions by highlighting inconsistencies between those opinions and Plaintiff's reported limitations and activities. (Def.'s Mem. at 17-20.)

An ALJ must consider and address the opinions of each medical source in the record, including state agency physicians. § 404.1527(b), (e); SSR 96-6p, 1996 WL 374180, at *2 (July

11

2, 1996). In deciding the appropriate weight to assign a medical opinion, an ALJ must consider the following factors: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and (6) any other relevant factors brought to the ALJ's attention which tend to support or contradict the medical opinion. § 404.1527(c)(2)-(6). While the ALJ must consider the state agency physicians' opinions, the ALJ is not bound to adopt any medical findings. SSR 96-6p, 1996 WL 374180, at *3; *see also* § 404.1513a(b)(1). However, the ALJ is required to explain why a state agency physician's opinion was not adopted, especially if the ALJ's residual functional capacity determination conflicts with a source's opinion. SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

In reviewing an ALJ's decision, the reviewing court "must defer to the ALJ's assignments of weight" among differing medical opinions unless his or her underlying findings or rationale "are not supported by substantial evidence" in the record, *Dunn*, 607 F. App'x at 271, or they were reached by means of an improper standard or misapplication of the law, *see Coffman*, 829 F.2d at 517.

Here, at the administrative level, State Disability Determination Service ("DDS") physicians Nicolas Tulou, M.D. and Richard Surrusco M.D. found that Plaintiff had the residual functional capacity to perform light work, and that specifically, Plaintiff could: occasionally lift or carry twenty pounds; frequently carry ten pounds; and sit and stand for about six hours in an eight-hour workday. (R. at 100-01, 114-15); § 404.1567(b). The DDS physicians also limited Plaintiff to occasional manipulation due to distal muscle wasting and a four out of five-grip strength. (R. at 100-01, 114-15.) Nonetheless, upon initial review and reconsideration, the DDS examiners

determined Plaintiff had the maximum sustained work capability to perform sedentary work.[4] (R. at 102-03, 117-18.)

The ALJ "generally adopted" the DDS physicians' opinions about Plaintiff's capability to perform light work, because that assessment was consistent with other evidence in the record. (R. at 47.) The ALJ explained:

> The claimant demonstrated some reduced strength, myotonia, and a mildly antalgic gait, but he also demonstrated normal strength in the shoulders, elbow flexion, hips, and knees, with no sensory deficits over the face, full trapezius and sternocleidomastoid strength, normal muscle bulk and tone, no pronator drift, no scapular winging, no percussion myotonia, normal coordination, and no fasciculations.

(R. at 47.) However, the ALJ gave little weight to the ultimate DDS examiner determination that Plaintiff demonstrated the maximum sustained work capability for sedentary work, because such limitation was not consistent with Plaintiff's activities of daily living. (R. at 48.) In support of this assignment of weight, the ALJ cited to Plaintiff's reports that he was a seasonal tobacco farmer, experienced no limitations in his activities, loaded wood into an outdoor wood heater, and enjoyed hunting deer and fishing. (R. at 48.)

The ALJ demonstrated that he considered the factors set forth in § 404.1527(c)(2)-(6) in weighing state agency physicians' opinions. The ALJ first recognized that Drs. Tulou and Surrusco are state agency physicians who did not personally examine Plaintiff. (*See* R. at 47.) The ALJ then found that Drs. Tulou and Surrusco's opinions did not have adequate support or consistency with

---

[4]     During the administrative process, DDS physicians assess claimants' residual functional capacities, with the assistance of a DDS disability examiner. POMS § DI 24501.001(B)(1)-(3). The DDS disability examiner is responsible for evaluating the "vocational aspects of the case." POMS § DI 24501.001(B)(1)(c). In the instant case, it appears that the DDS physicians opined that Plaintiff had exertional capabilities to perform light work, but the DDS examiners determined that Plaintiff's non-exertional limitations (i.e., his ability to handle and finger) limited him to sedentary work. (*See* R. at 100-03, 114-18.)

the record as a whole. (R. at 48.) For example, two months after his alleged onset date, Plaintiff reported to a provider that he had no limitations with his work as a seasonal tobacco farmer. (R. at 44, 297.) Similarly, Plaintiff denied muscle weakness and any limitations with activities of daily living. (R. at 303.) In 2018, Plaintiff reported no difficulty in doing any activities compared to the previous year. (R. at 422.) Plaintiff stated that he exercised by loading wood into an outdoor wood heater, and that he enjoys hunting and fishing. (R. at 421-22.)

Additionally, other medical evidence supports the ALJ's determination that Plaintiff could perform light work and could manipulate frequently. For example, Plaintiff frequently denied any weakness or loss of sensation, and had normal muscle tone. (R. at 44-46, 303, 336, 376.) Plaintiff also had only minimal loss of strength in his hands. (R. at 336 (noting Plaintiff demonstrated 4/5 handgrip).) Although the ALJ did not state whether he found Plaintiff's activities of daily living to be performed with frequent manipulation, it was not unreasonable for the ALJ to assume that such activities, coupled with the medical evidence in the record, supported the limitation that Plaintiff could "frequently" handle and finger to manipulate objects. *See Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011) (noting that the ALJ's decision must be read as a whole). Finally, although there is no indication that Drs. Tulou and Surrusco are specialists, they are state agency physicians with knowledge of the social security disability program. *See* §§ 404.1527(c)(6) ("we will also consider . . . the amount of understanding of our disability programs and their evidentiary requirements").

Thus, the ALJ sufficiently articulated why he generally adopted the assessments of Drs. Tulou and Surrusco that Plaintiff could still perform light work, but gave little weight to the opinions that Plaintiff demonstrated a maximum sustained work capability for sedentary work. (R. at 47-48.) Accordingly, the ALJ did not err on this ground.

14

**C.  The ALJ Erred by Failing to Address Plaintiff's Need for Additional, Unscheduled Breaks in his Residual Functional Capacity Determination.**

Plaintiff argues that the ALJ erred by failing to account for Plaintiff's need for additional unscheduled breaks to maintain his liquid diet. (Pl.'s Mem. at 9-10.) Specifically, Plaintiff argues that the preparation and consumption of Plaintiff's liquid diet meals require Plaintiff to take additional, unscheduled breaks during the workday. (Pl.'s Mem. at 9-10.) Plaintiff contends that the ALJ failed to account for such breaks, or failed to explain why the ALJ did not believe Plaintiff's statement regarding his need to consume six or seven liquid meals in a workday. (Pl.'s Mem. at 9-10.) In response, Defendant argues that the ALJ was not required to include Plaintiff's unsupported need for additional breaks in the residual functional capacity assessment. (Def.'s Mem. at 20.)

In crafting the residual functional capacity, an ALJ must conduct a function-by-function analysis, including a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio*, 780 F.3d at 636. When arriving at his conclusions regarding the claimant's residual functional capacity, the ALJ must "build an accurate and logical bridge from the evidence to [the ALJ's] decision" in order for the reviewing court to evaluate the ALJ's decision. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). The Court may not "fill in the blanks for the ALJ[,]" nor may the Court "[h]armoniz[e] conflicting evidence," or "bolster[] inconclusive findings" as these activities fall outside the scope of review. *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662-63 (4th Cir. 2017) (explaining that ALJ's must "show [their] work"). Remand may be appropriate where "inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636.

As a result of his myotonic muscular dystrophy type 1, Plaintiff suffers from dysphagia[5], and at the direction of his providers, consumes a liquid diet to avoid choking. (R. at 421.) Plaintiff was prescribed a "lactose-reduced" liquid food supplement, and was instructed to take the supplement by mouth, four times per day. (R. at 401, 424.) Plaintiff did not have any instances of choking after he adopted a liquid-only diet. (R. at 425.)

At Plaintiff's hearing before the ALJ, Plaintiff testified that he drinks a liquid meal "eight times a day." (R. at 68.) Plaintiff explained that it takes him ten to fifteen minutes to mix up his meal, and another ten or fifteen minutes to consume the liquid. (R. at 71.) Plaintiff stated that it takes him "at least" ten minutes to consume the meal because he will choke if he drinks it too fast. (R. at 71.) Plaintiff testified that during a normal workday, he would need to drink six or seven meals. (R. at 86.)

Plaintiff's father also testified at the ALJ hearing about Plaintiff's liquid diet. (R. at 77-78.) Plaintiff's father explained that it takes Plaintiff twenty to twenty-five minutes in total for Plaintiff to fix and consume his liquid drink. (R. at 74-75, 77-78.) Plaintiff's father explained that to prepare the liquid meal, Plaintiff must mix thickener in a bottle until the liquid is the consistency of honey, and "[i]t takes a while to get all that done." (R. at 75.) Plaintiff's father also explained that Plaintiff cannot simply "gulp [the meal] down" because the liquid will get in Plaintiff's lungs. (R. at 75.) Instead, Plaintiff must sip the drink to avoid an aspiration event. (R. at 75.)

---

[5]     The ALJ listed Plaintiff's dysphagia diagnosis as "nonsevere" or "not medically determinable." (R. at 42.) Plaintiff's providers have unequivocally recognized that Plaintiff suffers from dysphagia, which causes him to choke if he eats solid food. (*See e.g.*, R. at 421 (explaining the history of Plaintiff's dysphagia diagnosis, that Plaintiff reports doing well after being placed on a liquid diet, and that his providers recommended a feeding tube).) Thus, while this impairment is relatively "nonsevere," it is undisputed that Plaintiff's liquid diet is necessary to keep Plaintiff's condition under control. (*See* R. at 425 (noting Plaintiff's lack of aspiration events or pneumonia since his adoption of a liquid diet).)

After hearing testimony from Plaintiff and his father, the ALJ questioned the vocational expert about whether Plaintiff's consumption of his liquid diet during work hours would affect Plaintiff's ability to work. (R. at 85-87.) The vocational expert testified that even with normal breaks, Plaintiff's need to drink six or seven meals during the workday would be work-preclusive, as it would be off-task beyond what is tolerated. (R. at 86.)

In his decision, the ALJ cited Plaintiff's testimony regarding Plaintiff's liquid diet, but failed to assess the credibility of these statements or explain whether he accepted Plaintiff's testimony regarding the frequency and timing of his meals. (R. at 44.) The ALJ did, however, credit Plaintiff's father's testimony about Plaintiff's liquid diet, stating that "[t]he medical evidence supports [Plaintiff's father's] statements regarding the liquid diet." (R. at 48.) Despite finding that the medical evidence supported Plaintiff's father's statements about the timing and frequency of Plaintiff's liquid diet, the ALJ did not include a corresponding limitation for additional, unscheduled breaks in Plaintiff's residual functional capacity determination. (R. at 44, 48.) This gap in the ALJ's decision is especially problematic in light of the vocational expert's testimony that Plaintiff's preparation and consumption of six or seven liquid meals during the workday would be work preclusive. (R. at 85-86.) If the ALJ found that the medical evidence supported Plaintiff's assertions regarding his liquid diet needs, then the ALJ was required to explain why the vocational expert's testimony was not dispositive at step five of the sequential analysis to conclude there were no jobs in the national economy available to Plaintiff. *See* § 404.1560(c)(2) (explaining that the Commissioner bears the burden at step five for demonstrating that other work exists that a claimant can perform within his or her residual functional capacity determination). By failing to explain this reasoning, the ALJ failed to "build an accurate and logical bridge from the evidence to [the ALJ's] conclusion." *Monroe*, 826 F.3d at 189.

Defendant contends that Plaintiff "would readily be able to consume meals, even eight of them per day, around non-working hours and regularly scheduled breaks" and offers suggestions on how Plaintiff could accommodate his liquid diet, such as purchasing prepared shakes, drinking double shakes, and drinking an extra shake before and after his workday. (Def.'s Mem. at 21.) Defendant's contention would require the court to speculate whether such suggestions are compatible with Plaintiff's dietary requirements, and otherwise weigh medical evidence in the case. Such involvement by the Court is outside the scope of review. *See Patterson*, 846 F.3d at 662; *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) ("Just as it is not our province to 'reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ],' it is also not our province . . . to engage in these exercises in the first instance.") (internal citation omitted).

The ALJ failed to provide a limitation in Plaintiff's residual functional capacity determination regarding Plaintiff's need for additional, unscheduled breaks or otherwise failed to explain why such breaks were not necessary. Thus, remand is warranted on this ground for the ALJ to consider whether Plaintiff's need for a liquid diet is work-preclusive, or to explain why Plaintiff's liquid diet does not result in any limitation to his residual functional capacity.

**D. The Appeals Council Did Not Err by Failing to Consider the Opinion of Physical Therapist Peggy Anglin.**

Plaintiff argues that the Appeals Council erred by declining to review the opinion of Physical Therapist Peggy Anglin ("Ms. Anglin"), who examined Plaintiff subsequent to the ALJ's decision. (Pl.'s Mem. at 10-11.) Plaintiff submits that Ms. Anglin's opinion was relevant to the adjudicatory period, and therefore the Appeals Council erred in declining to review it. (Pl.'s Mem. at 10-11.) Defendant argues that Ms. Anglin's opinion is not relevant to the adjudicatory period because she examined Plaintiff six months after the ALJ's decision, and Plaintiff failed to

demonstrate good cause for not submitting Ms. Anglin's opinion to the ALJ. (Def.'s Mem. at 21-24.)

When a claimant submits evidence not already in the record to the Appeals Council, the Appeals Council will consider that evidence if it is "new, material, and relates to the period on or before the date of the ALJ decision." § 404.970(a). "Evidence is new if it is not duplicative or cumulative and is material if there is a reasonable probability that the new evidence would have changed the outcome." *Meyer v. Astrue*, 662 F.3d 700, 704-05 (4th Cir. 2011) (internal quotation marks omitted). New and material evidence must relate to the relevant adjudicatory period, and "not concern evidence of a later-acquired disability or the subsequent deterioration of the previous non-disabling condition." *See Cameron v. Astrue*, No. 7:10cv00058, 2011 WL 2945817, at *8 (W.D. Va. July 21, 2011) (citing *Szubak v. Sec'y, Dep't Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984)). If the new evidence submitted to the Appeals Council meets both requirements, the court "must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." *Wilkins v. Sec'y, Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). Additionally, as of January 17, 2017, the Appeals Council will only consider additional evidence that meets the standard above and the claimant shows "good cause" for not submitting the additional evidence to the ALJ in accordance with the regulations. § 404.970(b); § 404.935 (requiring evidence to be submitted no later than five business days before the ALJ hearing). "Good cause" for failing to submit additional evidence to the ALJ includes, but is not limited to: (1) actions by the agency that misled a claimant; (2) physical, mental, educational, or linguistic limitations that prevented a claimant from informing the agency about other evidence; and (3) other unusual or unavoidable circumstances, such as,

serious illness or death, destruction of records, or some other circumstance that resulted in the agency not receiving the evidence despite active and diligent efforts by the claimant. § 404.970(b).

Ms. Anglin examined Plaintiff on June 5, 2019, five months after the ALJ's decision. (R. at 8.) Ms. Anglin provided a comprehensive report regarding Plaintiff's abilities. (R. at 8-31.) In sum, Ms. Anglin found that:

> [Plaintiff's] physical tolerances/abilities are not compatible for competitive employment. He is limited in tolerance to standing and walking due to significant [lower extremity] weakness which also impairs his balance in standing/walking activities and places him at high risk for falls. His handgrip strength is only 18% of age/gender matched norms, which impairs his ability to manipulate objects and perform activities of daily living.

(R. at 10-11.) Ms. Anglin also found that Plaintiff's loss of muscle strength, high risk of choking, and difficulty with speech "affect[] his employability in a negative way." (R. at 11.) According to Ms. Anglin, Plaintiff's impairments are "chronic in nature" and not reversible. (R. at 11.)

Plaintiff requested that the Appeals Council review the ALJ's decision, and submitted Ms. Anglin's report as additional evidence. (R. at 2.) The Appeals Council declined to review Ms. Anglin's report, finding that the additional evidence "does not relate to the period at issue" because the ALJ decided Plaintiff's case on December 27, 2018, thereby considering evidence available through that date. (R. at 2.) The Appeals Council advised Plaintiff that he must apply for benefits again for this evidence to be considered. (R. at 2.)

The Appeals Council did not err in declining to review Ms. Anglin's report. First, Plaintiff has not demonstrated that Ms. Anglin's report relates back to the date of the ALJ's decision. Ms. Anglin's report comprehensively assesses Plaintiff's abilities and strength as of the date of her evaluation. (*See* R. at 15-30 (conducting functional assessment of Plaintiff's grip, fitness, mobility, strength, sustained activity level, and muscular function).) Nothing in Ms. Anglin's report,

however, suggests that the limitations she considered were present five months earlier, at the time of the ALJ's decision.

Plaintiff contends that Ms. Anglin's report relates back to the date of the ALJ's decision because it generally relates to his myotonic muscular dystrophy type 1 diagnosis, and Plaintiff has had that condition since 2015. (Pl.'s Mem. at 10-11.) In support of this contention, Plaintiff cites *Wade v. Colvin*, where the court determined that the Appeals Council erred by not considering new evidence, in part because the examinations offered after the ALJ's decision related to symptoms that were ongoing as part of Plaintiff's impairment. No. 7:12cv00621, 2013 WL 4520273, at *4 (W.D. Va. Aug. 26, 2013). However, in *Wade*, the new evidence submitted to the Appeals Council was from Plaintiff's treating physician, involved an assessment made three weeks after the ALJ's decision, and was based on new information not previously considered by the treating physician. *Id.* The ALJ in *Wade* had previously afforded the treating physician's opinion "great weight" and mere weeks after the ALJ's decision, the treating physician changed her opinion. *Id.* Under these circumstances, the court in *Wade* found that there was no way to determine how the Commissioner would have reconciled these contradictory opinions from the same medical source. *Id.*

In contrast, here, Ms. Anglin was not one of Plaintiff's treating physicians, her report reflects her first examination of Plaintiff, and her examination occurred five months after the ALJ's decision. (R. at 8.) While it may be true that Ms. Anglin opined on Plaintiff's limitations related to his myotonic muscular dystrophy type 1 diagnosis, it does not necessarily follow that those same limitations existed at the time of the ALJ's decision. *See Cameron*, 2011 WL 2945817, at *7-8.

Second, Plaintiff has not demonstrated a "reasonable probability" that the new evidence would have changed the outcome. No other medical provider opined that Plaintiff would require a

sit/stand limitation in his residual functional capacity. (*See* R. at 100, 114, 315, 385, 396). As for Plaintiff's manipulative abilities, Ms. Anglin opined that Plaintiff's ability to manipulate was impaired—but, the ALJ included a limitation in Plaintiff's residual functional capacity for frequent, but not constant, handling and fingering. (R. at 10-11, 44.) Otherwise, Ms. Anglin's report made general comments about Plaintiff's "employability," which is an issue reserved for the Commissioner. (R. at 10); § 404.1527(d). Thus, Plaintiff has not demonstrated to a "reasonable probability" that the ALJ's consideration of Ms. Anglin's report would have changed the outcome of the ALJ's decision.

Finally, Plaintiff has not offered any explanation, let alone "good cause," why Ms. Anglin could not have evaluated Plaintiff and submitted her report prior to the ALJ's decision. Under these circumstances, the Appeals Council did not err in declining to review Ms. Anglin's report.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 13) be GRANTED, that the Defendant's Motion for Summary Judgment (ECF No. 16) be DENIED and the final decision of the Commissioner be VACATED and REMANDED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar**

**you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____

/s/

Elizabeth W. Hanes
United States Magistrate Judge

Richmond, Virginia
Date: July 22, 2021

23